The Chancellor.
The decision of the case turns upon the question, whether the complainant holds the premises in dispute under the Shippen mortgages or as the tenant of Andrew Conrow ? It is insisted, on behalf of the defendants, that this being the only question upon which the case turns, it should have been left for decision in the ejectment suit, and not have been taken, by the interference of this court, from the jurisdiction of a court of law.
There is no dispute as to the paper title to the property. The point is, how that title is affected by the tenancy and possession of the complainant. Both parties claim under John Cooper — the complainant under the mortgage deeds of Cooper — the defendants under a warranty deed of Cooper, subject to the mortgages. The defendants insist that the complainant went into the possession as the tenant of Andrew Conrow. If this is true, then the complainant, although he is the legal or equitable owner of the mortgages, could not have defended under his mortgage title at law, because having gone into possession under Conrow, he could not dispute at law his landlord’s *138 title. But if the defendants can maintain this position; while the defendant, Morgan, who is the lessor in the action of ejectment, is entitled to the possession of the property, the circumstances under which the complainant obtained title to the mortgages make it equitable that Morgan should pay the mortgage money before the complainant should be compelled to part with his possession. The case of the defendants, if proved, is this. That in October, 1827, Oonrow, under whom Morgan claims, abandoned the property; that when he left it, he agreed with the complainant that he might take possession of the property, and keep it, on condition that he would keep down the interest on the mortgages; and that, to protect that possession, he was compelled to buy in these outstanding mortgages. Now if, to protect the possession under his landlord, the complainant was compelled to purchase the mortgages, he has a right to appeal to a court of equity to protect his equitable title, which a court of law might not have permitted him to set up as a defence against his landlord. It is equitable that the complainant, even if he did hold the possession as the tenant of Oonrow, should not be deprived of that possession until he is reimbursed the mortgage lien upon the property which he was obliged to purchase in, in order to protect his possession. I think, in this view of the case, the complainant is* rightly in this court. But if there is any doubt as to this view, the defendants are too late to interpose an objection as to the propriety of this court’s deciding the merits of this case. They have submitted to the jurisdiction — have answered the bill — taken depositions — and now, for the first time, make their objection upon the final hearing. The court have undoubted jurisdiction of the parties and of the subject matter. It is too late, in the progress of the suit, for the defendants to insist that the questions involved more appropriately belong to law than to equity.
The important question is — did the complainant take *139 possession as tenant under Conrow, or did he come in as mortgagee ?
There is no dispute but that the complainant has held the uninterrupted possession of the premises for more than twenty years prior to the commencement of the suit at law, and that when he entered all the mortgage money was due. This being the case, if he entered and held under the mortgages, then, by virtue of the statute, (Nix. Dig. 436, § 12,) the right or equity of redemption of the mortgagor was barred.
After examining with great care the evidence, my conclusion is, that it establishes very clearly that the complainant entered under the mortgages, and not as the tenant of Conrow, who stood in the place of the mortgagor, and held his title under him subject to the mortgages.
It is clearly proved that, in October, 1827, Conrow abandoned the property. His own declarations, as well as the condition in which he left the farm, prove such to have been his intention. He sold the only barn on the place to a neighbor, who removed it off the premises, and he declared “ that he had swept everything off, and left for good,” and that “ the mortgages would take care of the property.” He went to the western part of the state of New York. His whereabouts he kept secret from his old friends and neighbors, and his home in the west was not discovered until more than twenty years after his leaving New Jersey. During all that period he made no inquiries as to these premises.
At the time Conrow abandoned the premises, the whole amount of principal money ($600) on the two mortgages was due, with considerable arrears of interest. The mortgages were then owned by Eliza Shippen. On the 5th of April, 1828, after Conrow left, and while there was no one in possession of the premises, Eliza Shippen set up the mortgages for sale at public auction, and the complainant having bid three hundred and eighty-five dollars, the mortgages were struck off to him, as the highest bidder. *140 He paid down the sum of fifty dollars. On the 24th of the same month, he paid twenty-five dollars more; and on the 29th of the same month, twenty dollars more — at which time he took a writing showing his title to the mortgages by the purchase, and Mrs. Shippen’s agreement to assign the mortgages when one hundred and ninety dollars, the balance of the purchase money, should be paid. From that time the complainant has been the owner of the mortgages, although no actual assignment was made until about the time the ejectment suit was commenced. No question, however, has been made as to the complainant’s title to the mortgages in consequence of his not having the actual assignment. It is not very material whether he had or not. The facts are important to show the quo animo of his entering into the possession. In point of law — whether he entered as the legal owner himself of the mortgages, or under Eliza Shippen, who might be considered as the legal owner, is of no consequence. If he entered under some third person, as mortgagee, or if he himself was the mortgagee or assignee of the mortgages, the law applicable to his possession .is the same in either case. After complainant’s purchase of the mortgages — on the 10th of April, 1828, which was six months after Conrow abandoned the premises — the complainant took possession. Since then he has occupied and used the premises as the owner. He has put permanent improvements on them to an amount upwards of fourteen hundred dollars; and during that period, neither Conrow or any one else has questioned his possession.
All these facts and circumstances go to show that the complainant entered into the possession of the mortgaged premises under the mortgages, and adverse to the title of the mortgagor. In addition, there is evidence to show that Conrow did not consider the tenancy of the complainant subservient to his title. He made no inquiry after the possession until the year 1852, which was' nearly twenty-five years after he had abandoned the property *141 and left the state. In the early part of 1852, Isaiah Toy, hearing that Conrow was residing in Ontario county, New York, wrote to a postmaster in that neighborhood, making inquiries as to his residence, and in reply Mr. Toy received such information as enabled him to get a letter to Conrow. On the 3d of February, 1852, he wrote to him, and requested Conrow to inform him whether he had in his possession the deed for the farm; that he should like to see the title made clear; that if he had the deed, and would send it by mail, he would prepare one by it, &c. There was nothing in this letter to indicate that it was written at the complainant’s request. To this letter a reply was received from Conrow, requesting information as to who was in possession, and how he came by it. Then followed three more letters from Mr. Toy, relating to complainant’s possession, and urging him to give complainant a deed, in order to save the expense of foreclosure. This correspondence continued for nearly two years, commencing February, 1852, and terminating October, 1853. During this correspondence, there was no intimation on the part of Conrow that he regarded the complainant as his tenant, and no allusion to any arrangement he had made with him to take possession. After the receipt of these letters, Conrow declared Bates to be a squatter.
"We have in all this certainly very strong proof that the complainant entered into the possession of the premises under the mortgages; and we have nothing to contradict it — no fact or circumstance in conflict with it, except the testimony given by Andrew Conrow himself. In examining his evidence, it is important to remember that, while the law regards him as a competent witness, his testimony, of itself, is not, and particularly when it comes in conflict with other testimony, entitled to the same weight as that of an impartial witness.
Andrew Conrow says, that when he left, the complainant came to him, “ and asked him if he could come on *142 the place. Deponent told him he could; that there was a six hundred dollar mortgage on the place, and if he • would keep down the interest on the mortgage, he might stay there till deponent called for it; thinks there was some back interest due on the mortgage; told Bates he would have to square up the back interest, or they would probably foreclose the mortgage. Mr. Bates told deponent he thought he should come on without fail, and deponent sent back word he must be sure to keep down the ■interest.”
This may be all true, and yet, in connection with the other evidence I have referred to, it fails to prove that the complainant entered into the possession under the proposed arrangement to which Conrow testifies. “ Mr. Bates told deponent he thought he should come on without fail.” But the question remains — did he go in under any such arrangement ? Bor more than five months we find that he did not take possession. He was under no obligation to do it, because he had not even promised he would. It is apparent that Conrow did not care whether he did or not, for he made no inquiries about the premises for some twenty-four years. I have referred to some of the evidence, which tends to show that the complainant entered under the mortgages. That evidence, in my judgment, establishes the fact, and its conclusiveness is not, I think, at all impaired by the testimony of Andrew Conrow. I am therefore of opinion that the complainant is entitled to a decree.